```
┌─────────────────────────────────┐
│          Sealed                 │
│  Public and unofficial staff access │
│     to this instrument are      │
│   prohibited by court order.    │
└─────────────────────────────────┘
```

United States Courts
Southern District of Texas
FILED

JUN 1 6 2016

David J. Bradley, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, § | Criminal No. ___16 CR 0254 |
| v. §§ | |
| §§ | **UNDER SEAL** |
| EVELYN MOKWUAH, and §§ | |
| AMARA OPARANOZIE, §§ | |
| §§ | |
| Defendants. § | |

## INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Indictment, unless otherwise specified:

### The Medicare Program

1.     The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled.  Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS").  Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3.     "Part A" of the Medicare program covered certain eligible home-healthcare costs for medical services provided by a home healthcare agency ("HHA") to beneficiaries requiring home-health services because of an illness or disability causing them to be homebound.  Payments for home-healthcare services were typically made directly to a HHA based on claims submitted to

the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiaries.

4.      Physicians, clinics, and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare "provider number." A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5.      The Medicare program paid for home-health services only if the patient qualified for home-healthcare benefits.  A patient qualified for home-healthcare benefits only if:

    a.   the patient was confined to the home, also referred to as homebound;

    b.   the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care (or "POC"); and

    c.   the determining physician signed a certification statement specifying that:

        i.   the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

        ii.   the beneficiary was confined to the home;

        iii.   a POC for furnishing services was established and periodically reviewed; and

        iv.   the services were furnished while the beneficiary was under the care of the physician who established the POC.

6.      Medicare regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the HHA.

7.      These medical records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the HHA.

8.      Criseven Health Management Corporation ("Criseven") was a Texas corporation doing business at 7100 Regency Square, Suite 288, Houston, Texas 77036.  Criseven submitted claims to Medicare for home-health services.

9.      Beechwood Home Health ("Beechwood") was a Texas corporation doing business at 7100 Regency Square, Suite 252, Houston, Texas 77036.  Beechwood submitted claims to Medicare for home-health services.

10.     Defendant **EVELYN MOKWUAH**, a resident of Harris County, served as the Director of Nursing and Administrator of Criseven.  **EVELYN MOKWUAH** also served as the Alternate Administrator and Director of Nursing of Beechwood.  **EVELYN MOKWUAH** was a registered nurse.

11.     Defendant **AMARA OPARANOZIE**, a resident of Fort Bend County, worked as a registered nurse at Criseven and Beechwood.  **AMARA OPARANOZIE** also worked as the office manager of Beechwood.

12.     Physician-1, a resident of Harris County, Texas, was a physician licensed by the State of Texas and was affiliated with Medical Clinic-1.

3

## COUNT 1
### Conspiracy to Commit Healthcare Fraud
### (Violation of 18 U.S.C. § 1349)

13.     Paragraphs 1 through 12 are re-alleged and incorporated by reference as if fully set forth herein.

14.     From in or around January 2008 through in or around February 2016, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**EVELYN MOKWUAH and AMARA OPARANOZIE**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, in connection with the delivery of and payment for healthcare benefits, items, and services.

### Purpose of the Conspiracy

15.     It was a purpose of the conspiracy for defendants **EVELYN MOKWUAH** and **AMARA OPARANOZIE**, and others known and unknown to the Grand Jury, to unlawfully enrich themselves by (a) submitting false and fraudulent claims to Medicare, (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of proceeds from the fraud, and (c) diverting proceeds of the fraud for the personal use and benefit of defendants and their co-conspirators.

4

## Manner and Means of the Conspiracy

16.     Defendant **EVELYN MOKWUAH** maintained a Medicare provider number, which defendant **EVELYN MOKWUAH** used to submit claims to Medicare for home-health services that were not medically necessary, not provided or both.

17.     Defendant **EVELYN MOKWUAH** and her co-conspirators paid Medical Clinic-1 in exchange for POCs from Physician-1.  In these POCs, Physician-1 would falsely certify that Medicare beneficiaries were under Physician-1's care, when in fact, they were not under Physician-1's care.   Physician-1 would also falsely certify in these POCs that Medicare beneficiaries were home bound, when in fact, they were not home bound.

18.     Defendants **EVELYN MOKWUAH** and **AMARA OPARANOZIE** would respectively sign medical records falsely representing that Medicare beneficiaries qualified for home-health services, when those Medicare beneficiaries did not qualify for those services under Medicare.

19.     Defendants **EVELYN MOKWUAH** and **AMARA OPARANOZIE** submitted and caused the submission of claims to Medicare through Criseven and Beechwood for home-health services that were not medically necessary, not provided or both.  Medicare paid Criseven and Beechwood on those claims.

20.     From in or around January 2008 to in or around April 2016, Criseven billed Medicare $15,717,514.08 for purported home-health services.  Medicare paid $17,260,154.53 on those claims.

21.     From in or around May 2012 to in or around April 2016, Beechwood billed Medicare $3,078,283.63 for purported home-health services.  Medicare paid $3,202,452.68 on those claims.

22.     After Medicare deposited payments into the bank accounts of Criseven and Beechwood, defendant **EVELYN MOKWUAH** transferred proceeds of the fraud to herself, **AMARA OPARANOZIE**, and their co-conspirators.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Healthcare Fraud
### (Violation of 18 U.S.C. § 1347 and 2)

23.     Paragraphs 1 through 12 and 16 through 22 are re-alleged and incorporated by reference as if fully set forth herein.

24.     On or about the date specified below, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**EVELYN MOKWUAH** and **AMARA OPARANOZIE**

aided and abetted by, and aiding and abetting, others known and unknown to the Grand Jury, in connection with the delivery of and payment for healthcare benefits, items, and services, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, as set forth below:

6

| Count | Medicare Beneficiary | HHA | On or About Dates of Services | Approximate Medicare Payment |
|-------|----------------------|-----|-------------------------------|------------------------------|
| 2 | A.D. | Criseven | April 12, 204 to June 10, 2014 | $3,469.43 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to defendants **EVELYN MOKWUAH** and **AMARA OPARANOZIE** that upon conviction, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense is subject to forfeiture.

### Money Judgment

25.    Defendants **EVELYN MOKWUAH** and **AMARA OPARANOZIE** are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, which is approximately $20,462,607.21.

<u>Substitute Assets</u>

26.      Defendants **EVELYN MOKWUAH** and **AMARA OPARANOZIE** are notified that if any of the forfeitable property, or any portion thereof, as a result of any act or omission of defendants or their co-conspirators:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred, or sold to, or deposited with a third party;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File
FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

Scott P. Armstrong
TRIAL ATTORNEY
CRIMINAL DIVISION
FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

8