**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL ACTION H-16-254-1 |
| | § | |
| | § | |
| EVELYN MOKWUAH *on bond* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant Evelyn Mokwuah's motion for new trial. Dkt. 130.

The Government responded (Dkt. 140) and Mokwuah replied (Dkt. 141 (sealed)). The Government

filed a sur-reply. Dkt. 143. The court conducted a hearing on Mokwuah's motion on March 27,

2019. Dkt. 144. Having considered the motions, response, replies, evidence in the record, and

applicable law, the court is of the opinion that Mokwuah's motion for new trial (Dkt. 130) should

be DENIED.

**I. BACKGROUND**

On August 10, 2017, a jury convicted Mokwuah on five counts of healthcare fraud. Dkt. 87-

1. Count One concerned Mokwuah's general conspiracy to commit healthcare fraud, and the

remaining four counts related to individual beneficiaries. *Id.* Count Two charges Mokwuah with

healthcare fraud under 18 U.S.C. §§ 1347 and 2 relating to beneficiary Audrey Davis. *Id.* Mokwuah

now challenges her conviction on Count Two only, claiming that Audrey Davis gave false testimony

at trial on behalf of the Government.

At trial, Davis testified that an individual named Ego came to her house and provided her

with a cell phone in exchange for signing up for home health services through Mokwuah's health

services company. Dkt. 111 at 5–7. Davis allegedly received services from Mokwuah's company

from 2013 to 2014. *Id.* at 14. However, Davis testified that she was able to take care of herself during that time period and did not need or use home health care services. *Id.* at 16. Additionally, Davis testified that she was currently able take care of herself and did not need any home health assistance. *Id.* at 15. However, during cross-examination, defense counsel revealed that Davis was currently receiving home health care from "George Help Center." *Id.* at 19–20.

Mokwuah claims that, after trial, defense counsel received anonymous tips that Davis had been in bad health when she testified at trial and that she was receiving a high level of home health care services from Jordan Health Services at that time. Dkt. 113 (sealed). Mokwuah requested access to Davis's home health records from Jordan Health Services ("the Jordan records"). *Id.* Mokwuah also requested access to Davis's Social Security Administration ("SSA") records from 2011–2014 ("the SSA records"). Dkt. 114 (sealed). The court granted both requests. Dkts. 115, 116 (sealed).

Mokwuah now argues that Davis's testimony was materially false and that this defect entitles Mokwuah to a new trial. Dkt. 130. Specifically, Mokwuah argues that the Jordan records contradict Davis's testimony that she was healthy at the time of trial. *Id.* Additionally, Mokwuah argues that the SSA records indicate that Davis had multiple health problems from 2011 to 2014 and that she was receiving Medicaid and Social Security benefits at that time in addition to Medicare. *Id.* at 3. Mokwuah argues that these records show that Davis was not healthy in 2014, and that Davis's testimony was therefore materially false. *Id.*

## II. LEGAL STANDARDS

### A.    Rule 33 Motion for New Trial

Mokwuah argues that she is entitled to a new trial under Federal Rule of Criminal Procedure 33. Dkt. 130. Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

"Generally, motions for new trial are disfavored and must be reviewed with great caution." *United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011). The Fifth Circuit applies the "*Berry* Rule" to Rule 33 motions based on newly discovered evidence. *Piazza*, 647 F.3d at 565 (citing *Berry v. Georgia*, 10 Ga. 511 (1851)). Under the *Berry* Rule, a court may only grant a Rule 33 motion if the defendant demonstrates that: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal. *United States v. Franklin*, 561 F.3d 396, 405 (5th Cir. 2009); *see also United States v. Mendez*, 643 F. App'x 418, 428 (5th Cir. 2016). "The motion must be denied if the defendant fails to demonstrate any one factor." *Piazza*, 647 F.3d at 565. Denial of a Rule 33 motion on the basis of newly discovered evidence is reviewed for abuse of discretion. *Franklin*, 561 F.3d at 405.

### B.    Prosecutorial Duty to Disclose under *Brady v. Maryland*

Mokwuah also argues that she is entitled to a new trial under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194 (1963). Dkt. 130 at 5–6. *Brady* is a separate basis for granting a new trial, independent of Rule 33.

"[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith

or bad faith of the prosecution." *Brady*, 373 U.S. at 87. To prove a *Brady* violation, a defendant must show that: (1) the evidence at issue is favorable to the defendant, either because it is exculpatory or impeaching; (2) the evidence was suppressed by the Government, either willfully or inadvertently; and (3) prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82, 118 S. Ct. 1936 (1999). "The final prong of this test involves determining whether the concealed evidence is material." *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004). Evidence is material if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* (quoting *Strickler*, 527 U.S. at 290); *accord Smith v. Cain*, 565 U.S. 73, 76, 132 S. Ct. 627 (2012) (noting that impeachment evidence "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict.").

The duty to disclose includes "any favorable evidence known to the others acting on the government's behalf . . . including the police," even if the individual prosecutor is not aware of the evidence. *Id.* at 280–81 (quoting *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555 (1995)). The defendant need not have requested the disclosure. *Id.* at 280. In the Fifth Circuit, once a defendant demonstrates a *Brady* violation, the remedy is always a new trial. *United States v. Brown*, 650 F.3d 581, 588–89 (5th Cir. 2011).

### III. ANALYSIS

Mokwuah appears to argue that she is entitled to a new trial under both Rule 33 and *Brady*. *See* Dkt. 130. Rule 33 differs from *Brady* in at least two ways that are significant here: (1) Rule 33 does not allow for a new trial based on merely impeaching evidence (*Brady* does); and (2) under Rule 33, introduction of the evidence in a new trial must "probably" result in an acquittal, while under *Brady* the new evidence must only undermine confidence in the jury verdict. Because

Mokwuah fails to demonstrate that she is entitled to a new trial under either Rule 33 or *Brady*, her motion for new trial must be denied.

## A.  Rule 33

To obtain a new trial under Rule 33, Mokwuah must meet every element of the *Berry* Rule. *Piazza*, 647 F.3d at 565; *United States v. Wall*, 389 F.3d 457 (5th Cir. 2004) (applying the *Berry* Rule to claims involving allegedly perjured testimony).  However, Mokwuah fails to meet the second, third, and fifth elements of the rule.  Thus, her Rule 33 motion fails.

### 1.  Second Element: Lack of Diligence

First, Mokwuah fails to meet the second element of the *Berry* Rule—that "failure to detect the evidence was not due to a lack of diligence by the defendant." *Franklin*, 561 F.3d at 405.  As to the Jordan records, defense counsel was aware that Davis was receiving home health care services just before her testimony because counsel visited Davis at her home. Dkt. 111 at 17–20.  Davis did provide the wrong name for her home health provider at trial ("George" instead of "Jordan"), but it is difficult to believe that defense counsel would have been unable to obtain those records if they had conducted a diligent search for them.

Additionally, as to the SSA records, defense counsel was aware that Davis would be testifying at trial and that they would need to demonstrate that Davis was disabled enough to require home health care in 2014.  SSA and other federal agency records are a logical place to search for health records on someone who has received, and continues to receive, government assistance.  While Davis may not have volunteered that she was receiving SSA benefits, diligent investigation efforts by defense counsel should have uncovered those records.

### 2.    Third Element: Impeaching or Cumulative Evidence Insufficient

Next, Mokwuah fails the third element of the *Berry* Rule.  Under *Berry*, evidence does not warrant a new trial if it is merely impeaching or cumulative.  *Franklin*, 561 F.3d at 405.  Here, the newly discovered evidence is merely impeaching and not exculpatory.  Moreover, even if the SSA records are exculpatory, the records are merely cumulative.

First, both the Jordan records and the SSA records are best characterized as impeaching, instead of exculpatory, evidence.  The Jordan records are merely impeaching because they only address Davis's physical abilities at the time of trial, not at the time of the alleged fraud.  The SSA records *might* be exculpatory evidence if they showed that Davis actually needed the assistance that she received from Mokwuah's company, and that therefore Mokwuah's provision of services to Davis was not fraudulent.  However, there are several issues with this logic: (1) the SSA records do not directly show that Davis needed assistance (*see infra* p. 9); (2) Davis also testified that she did not actually receive any services from Mokwuah's company besides having her blood pressure taken occasionally—so, even if the SSA records do show that Davis was in need of home health services, Davis still testified that she did not receive those services from Mokwuah (Dkt. 111 at 7); and (3) even if Mokwuah did provide needed services to Davis, Mokwuah still committed fraud by allowing Dr. John Ramirez to falsely certify that Davis was in his care in order to induce Medicare to approve the home services (*see* Dkt. 140 at 3–4, 9) (summarizing testimony that Medicare would not reimburse a claim where the doctor had not seen or talked to a patient).  Given these issues, the SSA records are, at most, impeaching evidence and insufficient to warrant a new trial under Rule 33.

Second, even if the SSA records are exculpatory, the records are merely cumulative evidence.  At the time of trial, the Government had disclosed to Mokwuah: (1) Davis's patient file and medical records from Dr. Michael Neret, Davis's treating physician in 2014; (2) Davis's Medicare claims

data from 2013–2015; (3) interview reports with Dr. Neret; and (4) 2014 progress notes from a physician's assistant detailing Davis's health at that time.[1]  *See* Dkt. 143 at 1–3 and exhibits.  This evidence, taken together, likely encompasses all of the relevant health information contained in Davis's SSA records.  Mokwuah does not make any compelling arguments to the contrary.

The only component of the SSA records that was probably not included in the previously disclosed health records is the fact that Davis was deemed disabled by the SSA and was receiving disability payments.  *See* Dkt. 130 at 5 (summarizing the SSA records).  At the outset, however, any legal determination by the SSA would probably have been based on the same health information Mokwuah received before trial.  Further, the SSA's legal determination that Davis is "disabled" is not material under the fourth element of the *Berry* Rule.  *See Franklin*, 561 F.3d at 405.  The SSA defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment(s) which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Social Security Administration, *Disability Evaluation Under Social Security*, www. ssa.gov/disability/professionals/bluebook/general-info.htm.  This standard is designed to assess whether an individual is able to work.  Davis's ability to work under the SSA standard is tangential, at best, to whether she needed home health services in 2014.  Thus, even if evidence of Davis's disabled status is not cumulative, it is not material.  At most, the evidence is impeaching and therefore insufficient to warrant a new trial under Rule 33.

---

[1] The parties dispute the timing of the Government's disclosure of these progress notes (Government Exhibit 4). The Government claims it disclosed the records on June 13, 2017, nearly two months before trial, while defense counsel contended during the March 27 hearing that the records were not disclosed until the second day of trial.  *See* Dkt. 143 at 3 n.4.  However, even if defense counsel did receive the records during trial, the information contained in these progress notes is merely cumulative of other health records that defense counsel indisputably possessed.

### 3.  Fifth Element: No Probability of Acquittal

Finally, Mokwuah fails the fifth element of the *Berry* Rule because a new trial with the undiscovered evidence would not "probably produce an acquittal."  *Franklin*, 561 F.3d at 405.

As to the Jordan records, as previously discussed, defense counsel knew and had personally witnessed the fact that Davis was receiving home health care just before trial.  Dkt. 111 at 17–20. While Davis gave the wrong name for her provider, defense counsel still had the opportunity to cross-examine Davis on the fact that she had recently received home health care services and that therefore she was not currently as healthy as she claimed.  *Id.*  The Jordan records would have given Mokwuah extra evidence with which to cross-examine Davis (*e.g.* counsel would have been able to point out that Davis required a high level of assistance, while Davis testified that she did not presently need assistance), but the substance of the cross-examination would likely have stayed the same.

Thus, the only truly "new" evidence is Davis's 2014 SSA records.  However, introduction of this evidence would not "probably" result in Mokwuah's acquittal because the SSA records are minimally damaging, at most, to Davis's testimony.

At trial, Davis testified that "everything" in Mokwuah's records about Davis's physical abilities in 2014 was wrong: "I could do all my own stuff.  I could feed myself.  I could cook, lay out everything I need to do.  I don't need no help to do nothing."  Dkt. 111 at 16.  Davis also testified that she had been able to perform certain tasks, such as putting on undergarments and socks, that Mokwuah's records indicated Davis was unable to do.  *Id.* at 15.  The most strenuous thing Davis testified that she was able to do was go crab fishing with her husband, although it is unclear from her testimony whether she was able to do this in 2014, at the time of trial, or both.  *Id.* at 9.

Mokwuah argues that Davis's SSA records contradict this testimony because they indicate that Davis had been deemed "disabled" by the SSA since 1993. Dkt. 130 at 3. The records also indicate that Davis had been receiving disability payments since 2009. *Id.* A document from Dr. Neret, dated April 2014, shows that Davis was taking many prescription medications and had a chronic pain condition called trigeminal neuralgia. *Id.* at 4 (notably, the medical record indicates that Davis was "doing much better" with her neuralgia and that it had "resolved"). Mokwuah contends that these facts contradict Davis's testimony that she was in "good medical condition." *Id.* at 6.

However, Davis did not testify that she was in good medical condition. Rather, Davis primarily testified that she was physically able to take care of her basic needs at home. *See* Dkt. 111. As with the Jordan records, the SSA records would have given defense counsel more facts with which to cross-examine Davis. However, the SSA records do not necessarily contradict Davis's testimony that she was able to do the specific tasks that Mokwuah's records claimed she could not do. The records do indicate that Davis had a number of health conditions, which might bring Davis's crab-fishing claims into question. Even with that discrepancy, however, the SSA records only do limited damage to Davis's testimony or credibility. This is especially true given the fact that Davis was cross-examined at trial about the current state of her health, and defense counsel made the point that Davis could be an unreliable witness. *See* Dkt. 111 at 17–20. Thus, Mokwuah would probably not be acquitted at a new trial.

Overall, Mokwuah has failed to meet the stringent *Berry* standard. Most directly, *Berry* does not allow for a new trial based solely on impeachment or cumulative evidence. Therefore, Mokwuah's Rule 33 motion fails.[2]

## B. *Brady* Claim

Mokwuah's *Brady* claim also fails. Crucially, Mokwuah has not shown that the Government suppressed evidence. Additionally, Mokwuah cannot show prejudice because the new evidence does not undermine confidence in the verdict.

### 1. Suppression by the Government

In order to bring a successful *Brady* claim, Mokwuah must first show that "the evidence was suppressed by the Government, either willfully or inadvertently." *Strickler*, 527 U.S. at 281–82. However, Mokwuah does not allege that the Government possessed the undiscovered evidence and failed to disclose it. Rather, Mokwuah argues that the Government failed to ask Davis about impeaching information, and therefore the Government was willfully or negligently blind to potential *Brady* material. Dkt. 130 at 6 ("The government did not, apparently, bother to ask Ms. Davis or any other witness about impeaching information. The prosecutor's willful or negligent blindness to *Brady* material should not be allowed to deprive Ms. Mokwuah of a fair trial."). The Government states that it did not have or withhold any of the undiscovered information prior to trial.[3] Dkt. 143.

---

[2] At the March 27 hearing, defense counsel appeared to argue yet another basis for a new trial—a *Napue* violation. *See Wall*, 389 F.3d at 472 (citing *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173 (1959)). Under *Napue*, a criminal defendant is entitled to a new trial if the government used false testimony that it knew or should have known was false. *Id.* at 473. However, in order to establish a *Napue* violation, the defendant must meet the first four *Berry* requirements and also show that the testimony in question was "actually false." *Id.* Here, Mokwuah fails to meet the second and third elements of the *Berry* Rule. Additionally, Mokwuah cannot show that Davis's testimony was actually false. *See supra* p. 8–9. Thus, to the extent Mokwuah makes a claim under *Napue*, that claim fails.

[3] *See supra* note 1. Although the parties dispute the date on which the Government disclosed Davis's progress notes (Government Exhibit 4), the defense cannot prove that the Government possessed these records prior to trial and withheld them. The Government repeatedly represented that the records were disclosed well in advance of trial. Dkt. 143 at 3 n.4. Moreover, defense counsel first mentioned this alleged withholding at the March 27 hearing and did

In a criminal case, the prosecution is charged with knowledge of "any favorable evidence known to the others acting on the government's behalf." *Strickler*, 527 U.S. at 280–81 (quoting *Kyles*, 514 U.S. at 437). Despite this broad mandate, *Brady* generally "does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case." *East v. Scott*, 55 F.3d 996, 1004 (5th Cir. 1995) (quoting *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990)). However, the Government is deemed to have knowledge of certain types of government records, such as criminal history information, to which the prosecution has unique and ready access. *Id.* (citing *United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980)).

Thus, in order to succeed under *Brady*, Mokwuah must show that either: (A) the prosecutors or the investigators actually possessed the undiscovered evidence; or (B) the evidence was uniquely and readily available to the prosecution. Again, the Government asserts that it did not possess any of the new evidence prior to trial, and Mokwuah has not refuted this claim. Dkt. 143. In order to prevail, then, Mokwuah must show that both the Jordan records and the SSA records were uniquely and readily available to the prosecution and not the defense.

Fifth Circuit precedent on this issue is mixed, but Mokwuah's argument ultimately fails. The Jordan records do not fall into the "unique and ready access" category because those records are from a private company, and Fifth Circuit precedent in this area focuses solely on governmental records. *See, e.g.*, *Auten*, 632 F.2d at 581. Moreover, there are no other indications that the prosecution would have had better access to those records than the defense.

However, the SSA records are a closer call because they were in the possession of a federal agency. The Fifth Circuit's decision in *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973) (overruled on other grounds by *United States v. Henry*, 749 F.2d 203 (5th Cir. 1984)), contains broad

not discuss the allegations in any prior briefing. Based on the parties' briefing and representations at the hearing, the court concludes that the Government did not withhold any evidence from the defense.

language suggesting that the prosecution may be obligated under *Brady* to disclose any records in possession of any part of the federal government. *See Auten*, 632 F.2d at 481 (emphasizing the *Deutsch* court's holding that different arms of the government were not "insulated" from each other for *Brady* purposes); *but see Martinez v. Wainwright*, 621 F.2d 184, 186 (5th Cir. 1980) (acknowledging the *Deutsch* court's holding, but also emphasizing that the evidence sought by the defendant was only available to the prosecution). In *Deutsch*, the Fifth Circuit held that the prosecution had a duty to obtain and disclose certain U.S. Postal Service files when: (1) the prosecution was working closely with USPS to build its case; (2) one of the prosecution's key witnesses was a USPS employee; and (3) the defendant specifically asked for the files in question, but the prosecution did not attempt to obtain them. *Deutsch*, 475 F.2d at 57–58. The court reasoned that "there is no suggestion in *Brady* that different 'arms' of the government, particularly when so closely connected as this one for the purpose of the case, are severable entities." *Id.* at 57. However, other Fifth Circuit precedent contemporary with *Deutsch* suggests that the prosecution is only under a *Brady* obligation to disclose information in the possession of the "prosecution team."[4] *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979) (declining to "draw a distinction between different agencies under the same government," but "focusing instead upon the 'prosecution team'" and citing *Deutsch* for comparison only and not for supporting authority).

In contrast, later formulations of the *Deutsch* rule emphasize that the evidence must be "readily available" to the Government and that the Government must have had better access to the evidence than the defense. *See United States v. Webster*, 392 F.3d 787, 798 n.20 (5th Cir. 2004) (citing *Williams v. Whitley*, 940 F.2d 132, 133 (5th Cir. 1991)) (acknowledging *Deutsch*, but noting

---

[4] Notably, in cases following *Deutsch* where the Fifth Circuit found "unique access," the *Brady* violations typically involved failure to search out and disclose criminal history records. *See Auten*, 632 F.2d at 481; *Martinez*, 621 F.2d at 186.

that "there are limits on the imputation of knowledge from one arm of the government to prosecutors" and that disclosable information must be "*readily available*" to the prosecution (emphasis in original)); *East*, 55 F.3d at 1003–04 (reasoning that the defendant had failed to show how the undiscovered evidence was "any more accessible to the prosecution than to the defense" and emphasizing that the prosecution was not under any obligation to conduct a defendant's investigation). In these later cases, the Fifth Circuit held that federal prosecutors do not have unique or ready access to information regarding: (1) the existence of a lawsuit previously brought by the Department of Justice against a defendant's school district (*Webster*, 392 F.3d at 798 n.20); or (2) the mental health history of a Government witness (*East*, 55 F.3d at 1003). Therefore, even though such evidence may have been exculpatory or impeaching under *Brady*, the Government was not obligated to investigate and disclose evidence on those matters.

Here, under *Webster* and *East*, the prosecution did not have a *Brady* obligation to search for and disclose Davis's SSA records. In *Webster*, federal prosecutors were not even charged with knowledge of records within the Department of Justice itself. *Webster*, 392 F.3d at 798 n.20. Thus, the *Webster* decision eliminates any possibility that *Deutsch* imputes knowledge of all federal records to federal prosecutors. Instead, *Deutsch* and its progeny appear to stand for the rule that federal prosecutors are imputed with knowledge of evidence when either: (1) the federal agency with the relevant records is actively involved in the prosecution; or (2) the information is available only or primarily to the prosecution and not the defense.[5] Here, the SSA was not actively involved in Mokwuah's prosecution. Additionally, the prosecution did not have unique access to SSA records that defense counsel did not have. Defense counsel readily obtained Davis's SSA records upon

---

[5]Other circuits have taken this more narrow view of the *Deutsch* rule. *See, e.g.*, *United States v. Combs*, 267 F.3d 1167, 1175 (10th Cir. 2001) (reading *Deutsch* to be part of a line of cases holding that "*Brady* is broadly construed to apply to agencies in reasonable proximity to the prosecution.").

request.  *See* Dkt. 116.  Therefore, even though Davis's records were in the possession of a federal agency, the prosecution did not suppress those records and no *Brady* violation occurred.

### 2.       Harm Analysis

Further, even if the Government did suppress evidence under *Brady*, Mokwuah must still demonstrate that the new evidence is sufficiently material to undermine confidence in the verdict. *Smith*, 565 U.S. at 76.  This she cannot do.

First, as discussed above, the new evidence is not particularly damaging to Davis's credibility or testimony.  *See supra* pp. 8–9.  This is especially true given that Davis was already cross-examined about some of the material.  *See supra* p. 8.  The jury had the opportunity to hear Davis's testimony, consider defense counsel's cross-examination, and determine whether Davis was a credible witness in light of all the other evidence produced at trial.

Second, even if the evidence was significantly damaging to Davis, the Government has sufficient evidence that Mokwuah committed fraud in Davis's case even without Davis's testimony regarding her health.  As discussed *supra*, the Government produced testimony at trial that Medicare would not approve home health services if the doctor recommending the services had not seen or spoken to the patient.  *See* Dkt. 140 at 3–4.  The Government also produced evidence that Dr. Ramirez had recommended Davis's home health services at Mokwuah's direction, but Davis testified that she had not seen or spoken to Dr. Ramirez and that she was not his patient.  *Id.* at 5–6. Therefore, Dr. Ramirez's involvement in Davis's case was fraudulent regardless of Davis's physical health.  Additionally, even if Davis was in need of home health services, Davis testified that she did not receive any services from Mokwuah's company besides having her blood pressure taken occasionally.  Dkt. 111 at 7.  Thus, because the Government can prove fraud without addressing Davis's physical health, the new evidence does not undermine confidence in the verdict.

Third, as discussed *supra* pages 6–7, defense counsel had most (if not all) of the relevant information contained in the new evidence prior to trial. Defense counsel could have presented this information to the jury, but did not do so. The court finds that the new evidence is not sufficiently material to undermine confidence in the verdict on Count Two.

## IV. CONCLUSION

Mokwuah fails to meet several elements of Rule 33 and the *Berry* Rule. Additionally, Mokwuah's *Brady* claim fails because Mokwuah cannot show that the Government suppressed evidence or that she was prejudiced as a result. Therefore, Mokwuah's motion for new trial (Dkt. 130) is DENIED.

Signed at Houston, Texas on March 28, 2019.

Gray H. Miller
Senior United States District Judge